## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## CIRCUIT CIVIL DIVISION

MITCHELL BERNIER

CASE NO: _____
DIVISION: _____

        Plaintiff,

-vs-

FEDERAL BUREAU OF INVESTIGATIONS of the
DEPARTMENT OF JUSTICE of the UNITED STATES,
HILLSBOROUGH COUNTY,
CITY OF TAMPA, MATTHEW ZALANSKY, Individually,
and WILLIAM GERGEL, Individually

        Defendants.

_____/

### COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, **MITCHELL BERNIER,** sues the Defendants, **FEDERAL BUREAU OF INVESTIGATIONS, HILLSBOROUGH COUNTY, CITY OF TAMPA, MATTHEW ZALANSKY, Individually, and WILLIAM GERGEL, Individually** and alleges as follows:

### INTRODUCTION

1.      This is an action for money damages against Defendants, **FEDERAL BUREAU OF INVESTIGATIONS, HILLSBOROUGH COUNTY, CITY OF TAMPA, MATTHEW ZALANSKY,** a police officer with the City of Tampa, and **WILLIAM GERGEL,** a Deputy Sheriff with the Hillsborough County for the violation of Plaintiff's constitutional and common law rights. Plaintiff, **MITCHELL BERNIER,** alleges Defendants **FEDERAL BUREAU OF INVESTIGATIONS, HILLSBOROUGH COUNTY, CITY OF TAMPA, MATTHEW ZALANSKY and WILLIAM GERGEL** unlawfully arrested him and prosecuted him for RICO

and Conspiracy to Commit RICO and that Defendants, **FEDERAL BUREAU OF INVESTIGATIONS, HILLSBOROUGH COUNTY, CITY OF TAMPA** are liable for its custom and practice of improperly supervising Confidential Informants that led law enforcement with the **FEDERAL BUREAU OF INVESTIGATIONS, CITY OF TAMPA and HILLSBOROUGH COUNTY** to believe they could violate Plaintiff's constitutional rights.

2.     Plaintiff, **MITCHELL BERNIER**, alleges violation of his federal civil rights, specifically his fourth and fourteenth amendment rights to be free from seizures rendered unreasonable by the absence of probable cause and the right to be free from malicious prosecution by a law enforcement officer. Plaintiff seeks declaratory and compensatory relief, punitive damages and all costs, including attorneys' fees.

## JURISDICTION AND VENUE

3.     This action arises under 42 U.S.C. §§ 1983 and 1988. Jurisdiction is founded on 28 U.S.C. §§ 1319(B) and Local Rule 1.02(b)(4).

4.     All incidents material to this action occurred in Hillsborough County, Florida and all Defendants reside in Hillsborough County. Venue is this proper in the Tampa Division of the Middle District of Florida pursuant to 28 U.S.C. § 1391(b) and Local Rule 1.02(b)(4).

## PARTIES

5.     At all material times Plaintiff, **MITCHELL BERNIER**, was a resident of Hillsborough County, Florida and a citizen of the United States of America.

6.     At all material times, Defendant, **FEDERAL BUREAU OF INVESTIGATIONS** (hereinafter referred to as "**FBI**"), is an agency of the DEPARTMENT OF JUSTICE of the UNITED STATES.

2

7.     At all material times Defendant, **HILLSBOROUGH COUNTY,** is a political subdivision of the State of Florida.

8.     At all material times **HILLSBOROUGH COUNTY SHERIFF'S OFFICE (hereinafter referred to as "HCSO"),** was a law enforcement agency for Defendant, **HILLSBOROUGH COUNTY.**

9.     At all material times, Defendant, **HILLSBOROUGH COUNTY,** employed Defendant, **WILLIAM GERGEL,** as a sworn Sheriff's deputy with the Hillsborough County Sheriff's Office.

10.     At all material times, Defendant, **WILLIAM GERGEL,** acted under color of state law and within the scope of his employment as a law enforcement officer for **HCSO.** Upon information and belief Defendant, **GERGEL,** was at all material times a resident of Hillsborough County, Florida.

11.     At all material times Defendant, **CITY OF TAMPA,** is a political subdivision of the State of Florida, a Florida municipal corporation, and lies within the confines of Hillsborough County.

12.     **TAMPA POLICE DEPARTMENT (hereinafter referred to as "TPD"),** was a law enforcement agency for Defendant, **CITY OF TAMPA.**

13.     At all material times, **CITY OF TAMPA** employed Defendant, **MATTHEW ZALANSKY** as a sworn police officer with Tampa Police Department.

14.     At all material times, Defendant, **MATTHEW ZALANKSY** acted under color of state law and within the scope of his employment as a law enforcement officer for **TPD.** Upon information and belief Defendant, **ZALANSKY,** was at all material times a resident of Hillsborough County, Florida.

3

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

15.    On August 20, 2006 Plaintiff, **MITCHELL BERNIER**, attended a gathering at the Caribbean Club located in Tampa, Florida along with a number of other individuals who were alleged to be a part of a group known as the "Latin Kings."  Law enforcement raided the event and arrested all in attendance.

16.    Plaintiff, **MITCHELL BERNIER**, was one of those arrested and charged with one count of violation of the Racketeer Influence and Corrupt Organizations Act (hereinafter referred to as "RICO") and one count of Conspiracy to Commit RICO on August 20, 2006.

17.    Plaintiff was booked into the Hillsborough County Jail on August 20, 2006 with a bond in the amount of $100,000.00 and issued the booking number 06055395.

18.    Unable to bond himself out of jail, Plaintiff resided in the Hillsborough County Jail until January 19, 2007.

19.    An Information charging RICO and Conspiracy to Commit RICO against the Plaintiff was filed on September 11, 2006. A superceding Information was filed on October 10, 2006.

20.    On February 16, 2007, all charges against the Plaintiff were Nolle Prossed.

21.    The arrest of Plaintiff, as well as others, on August 20, 2006 was the result of an eighteen month investigation conducted by the **TPD, HCSO and the FBI.**

22.    The investigation began in November of 2005, when Luis Danny Agosto ("CI"), who became the confidential informant (CI), was arrested on an outstanding warrant, charging him with Armed Burglary of a Dwelling, Grand Theft Firearm, Grand Theft, and Grand Theft Motor Vehicle, stemming from the burglary of a home.

23.    The CI had avoided arrest on the outstanding warrant until November 14, 2006,

4

when he was finally arrested after giving a police officer a false name.

24.     At all material times, CI had a history of violent crimes and thefts which had resulted in at least thirteen  prior felony convictions some of which had resulted in  terms of imprisonment with the Florida Department of Corrections.

25.     Once incarcerated in November 2005, TPD Officer **ZALANSKY** and FBI Agent Dan Wierzbicki ("Wierzbicki") visited CI at the jail and discussed the possibility of his cooperation with law enforcement.

26.     At all material times, Wierbicki acted under color of state and federal law and within the course and scope of his employment with the FBI.

27.     When **ZALANKSY** and Wierzbicki visited CI in November 2005, he was facing charges that could expose him to a long prison sentence as a PRR ( Prison Release Reoffender) or HFO (Habitual Felony Offender).  Under either of these enhancements, if convicted as charged, CI was looking at a sentence ranging from twenty-five years to life.  Once approached by law enforcement, CI decided to cooperate with the hopes of avoiding a prison sentence.

28.     While law enforcement questioned CI and tried to assess his fitness as a potential informant, CI denied all involvement in the pending burglary.  However, CI's explanation of how he came to be in possession of the victim's property should have caused law enforcement to question his fitness for use as a confidential informant.

29.     Instead, law enforcement dropped the Armed Burglary of a Dwelling charge against CI and allowed him to plead to two counts of Grand Theft, for which he was subsequently sentenced to probation as an HFO on March 16, 2006.  Therefore, during the bulk of the investigation which led to the arrest of Plaintiff and others, the CI was on felony probation.

30.     Law enforcement gave the CI this opportunity due to their desire to get the "Latin Kings" guns and drugs and their belief that this CI could assist them in this endeavor.

31.     While in jail, CI called Defendant, **ZALANSKY** and informed him that, upon his release, he would be elected as the third to the Latin Kings.

32.     The third position within the alleged organization is allegedly the position of enforcer.

33.     CI told **ZALANSKY** that, in that position, he would have the power to "force" people to attend the meetings and "set" everything up. To this, **ZALANSKY** replied, "That'll be good."

34.     CI was released from jail on January 30, 2006. On or about February 3, 2006, he met with **ZALANSKY** and Wierzbicki. At that meeting, CI was issued a phone that was allegedly being monitored twenty-four hours a day, seven days a week.

35.     CI signed a cooperation agreement with the FBI which instructed him, among other things, to tell the truth and that he could commit no crimes.

36.     Law enforcement, including, Defendants, never told the CI to avoid entrapping others nor did they instruct him on how to deal with or what to say to potential targets.

37.     Law Enforcement informed CI that the three things they wanted from him were: Latin Kings, drugs and guns.

38.     At that time the local Latin King organization was dormant and had been since August of 2005.

39.     CI was employed by law enforcement to get the group back together and arrange meetings in which discussions of alleged criminal activity would take place.

40.    At all material times, the Defendants knew or had reason to know that they had the ability to control CI.

41.    At all material times, CI was an agent of the Defendants.

42.    As an agent of the Defendants, all acts of the CI are imputed to Defendants.

43.    In February of 2006, many of the former members of the local Latin King organization were reluctant to attend meetings the CI was attempting to set up.

44.    In March of 2006, the CI began issuing threats of bodily injury to those who would not attend his arranged "Latin King" meetings.

45.    In fear of the threats many began to attend meetings which the CI conducted from March of 2006 through August 20, 2006.

46.    The Plaintiff, only attended the August 20, 2006 meeting, this meeting became known as the "Universal."

47.    During the course of the investigation Law enforcement, including the Defendants, knew or should have known that the CI was committing crimes.

48.    When the Defendants caught the CI committing crimes they excused the CI's criminal conduct and continued permitting him to work for law enforcement.

49.    The CI engaged in the following criminal activities while working for law enforcement: driving on a suspended license; stealing motorcycles; providing cocaine; counterfeit money transactions; taking steps in preparation for home invasion robberies; providing information so that individuals could get beaten; working on stolen motorcycles; driving a stolen motorcycle to the Miami area with a tag not assigned; threatening and harassing the mother of his child; possession of a firearm by a convicted felon; perjury and entrapment.

**Motorcycle Thefts**

50.    In the early morning hours of February 16, 2006, the CI, along with three individuals by the names of "Mondi," "Tolbert," and "BJ" drove all over Tampa looking for motorcycles to steal.

51.    The only person that could give the "go-ahead" to steal a motorcycle was the CI.

52.    The CI and Tolbert would communicate to each other by using the boost connect feature of their phones.  CI was using the FBI-issued phone, which was being recorded 24/7 by the FBI.  They began their criminal activity a little after midnight and continued until approximately 5:00 a.m.

53.    During this episode, either two or three motorcycles were stolen.

54.    Due to Defendants', **FBI, CITY OF TAMPA and ZALANSKY's,** carelessness, an agent of law enforcement (CI) stole motorcycles from unsuspecting citizens in our community.

55.    The FBI failed to monitor the CI's government issued phone from February 1, 2006 through February 17, 2006. The FBI finally listened to the calls and realized their CI was committing crimes on or about February 17, 2006.

56.    **ZALANSKY** discovered that the CI had been engaging in criminal activity when he was notified by Wierzbicki on or about February 17, 2006.  **ZALANSKY** went to the **FBI** office and listened to various calls, which confirmed that the CI had stolen motorcycles.

57.    After confronting the CI and receiving his "story," **ZALANSKY** never listened to any of the recorded calls to see whether they corroborated the CIs story or established that he, CI, had lied yet again.

8

58.     Despite knowing the CI had engaged in the motorcycle thefts Defendants, **FBI,
and CITY OF TAMPA, ZALANSKY** continued to use Danny as a CI.

59.     Defendants, **FBI and CITY OF TAMPA, ZALANSKY,** attributed these
motorcycle thefts to the Latin Kings.

60.     A Latin King organization didn't even exist in Tampa at the time of the
motorcycle thefts and the alleged "state" organization had nothing to do with Tampa since
August 2005.

### Cocaine Brokering

61.     At all material times the CI was acting as a middle man and obtaining cocaine for
his friend, Lynette.

### Counterfiet Money

62.     At all material times, CI engaged in the creation and distribution of counterfeit
money.

### Aggravated Assault

63.     The CI did not get out of jail until January 30, 2006 because, prior to cooperating
with law enforcement, he had pled to a Battery and Stalking charge and was sentenced to ninety
(90) days in jail.  The victim of these crimes was his baby's mother, Jeannie (Ramos).  In 2004,
CI pled to and was sentenced for similar crimes where Jeannie had also been the victim.

64.     The CI stayed in communication with Ms. Ramos while in jail and upon his
release.

65.     On March 14, 2006, beginning at 12:07 a.m., the CI repeatedly called Ms. Ramos,
threatening her and her new boyfriend.  The CI threatened Ms. Ramos with significant violence
specifically he told her that he was going to beat her until her brains bled out of her ears.

66.    The CI made these threats with impunity all the while using the FBI issued phone that he knew was recording all calls twenty four hours a day, seven days a week.

67.    Upon discovering these threats after listening to the calls, **ZALANSKY** made several phone calls to the CI trying desperately to persuade him to stop making the calls. **ZALANSKY** told the CI that he needed to speak with him regarding these matters in person because the calls were being recorded. Despite **ZALANSKY's** pleas the CI continued to threaten both Ms. Ramos and her boyfriend using the FBI issued phone.

68.    In addition to continuing to threaten Ms. Ramos that he was going to beat her until her brains seeped out of her ears, he also threatened her that he was going to knock her "grill" (slang for teeth) out of her mouth and that he was going to knock her tooth out.

69.    At that time, the CI further threatened the boyfriend that he was going to sodomize him with a broom handle. In another call he threatened the boyfriend that he (CI) was going to put a "cap [bullet] in your ass" (slang for shooting the boyfriend in the buttocks).

### Driving while license suspended

70.    At all material times, Defendant, FBI, City of Tampa and **ZALANSKY** and Hillsborough County and Gergel knew or should have known that CI was continuing to operate motor vehicles on the public roads of the State of Florida with a suspended driver's license.

71.    Subsequent to the above actions with Ms. Ramos, the CI was to move to Miami because he lied to law enforcement that Ms. Ramos had compromised his CI status.

72.    Defendants, FBI, City of Tampa and **ZALANSKY** allowed the CI to drive to Miami knowing he had a suspended license.

73.    At that time, Defendant, FBI, also offered CI more money for his living expenses. Specifically, the FBI told CI "not to worry about anything, we will pay you more money."

## Continuation as CI with TPD

74.    After this series of events, the FBI "officially" terminated the CI as a confidential informant on March 22, 2006.

75.    The recording function of the FBI issued cell phone was disconnected about three weeks after the CIs termination with FBI.

76.    The "termination" of the CI with the FBI was a ruse on the part of the FBI. Due to the FBI guidelines for the handling of confidential informants the FBI could no longer employ the CI as he had repeatedly violated these guidelines.

77.    During his cooperation agreement with the FBI the CI was provided monthly payments, an apartment and a cell phone.

78.    After the CI's purported "termination" with the FBI, the FBI remained a constant presence in the Latin King "investigation." Specifically, the FBI continued to provide the CI with monthly living expenses, an apartment, surveillance equipment, including surveillance cameras in CI's apartment and the previously discussed cell phone but without the monitoring/recording feature, and were the official "notetaker" for all meetings with the CI.

79.    Upon the CI's purported "termination" by the **FBI, TPD** chose to sign him as a CI with their agency. At the time of this decision, Defendants, **City of Tampa** and **ZALANSKY**, knew of the reason for the **FBI's** termination. Yet Defendants, **City of Tampa** and **ZALANSKY**, chose to sign him as a confidential informant nonetheless and further chose not to continue supervising their CI with the recording function of the cell phone.

80.    Despite the alleged "termination" as a CI by the FBI,  the FBI still worked in cooperation with Defendants and all Defendants were in joint or concurrent control of CI.

81.    Defendants, **FBI, TPD and ZALANSKY** knew that CI remained a de-facto agent

of the Defendants.

82.     Subsequent to March 22, 2006 Defendants continued to provide CI with an apartment, monthly payments as well as allowing him to keep his FBI issued cell phone.

83.     Defendants knew or should have known that if the CI was repeatedly violating his cooperating agreement by committing criminal acts **while** being monitored, that he would continue committing crimes and potentially more serious crimes **without** the supervision of the recorded calls.

84.     In signing the CI as a **TPD** informant, **ZALANSKY** and his supervisors violated their own standard operating procedures regarding the use of confidential informants.

85.     TPD Standard Operating Procedure ("SOP") 670 states that an officer should ensure that an informant has never been used and terminated for unreliability.

86.     TPD signed CI on or about March 23, 2006.

87.     The CI had been informed when he signed the initial cooperation papers with the FBI that he was not to commit crimes without law enforcements knowledge and that he had to report everything he knew to law enforcement truthfully.

88.     The CI violated the above purported policy of "not to commit crimes" but in reality Defendants had an unofficial custom and practice of disregarding its own policies, such as the above mentioned, when they felt such violation justified their "investigation."

89.     **TPD** also knew or should have known that committing crimes while cooperating is the same as being unreliable for purposes of **TPD's** SOP's regarding CI's.

90.     A review of TPD's Confidential Informant Working Agreement with this CI further reveals that, in the section where the contract asks if the confidential informant has ever worked for another agency, Officer Zalansky wrote "no."

91.     The form then asks, "If so, what agencies and when?" and Zalansky wrote,

"N/A."

92.     City of Tampa and Zalansky knowingly completed the working agreement with

false information. TPD knew that the CI had previously been employed and terminated by the

FBI.

### Illegal Possession of a Firearm

93.     At all material times and during his cooperation with law enforcement, the CI

possessed a firearm on many occasions, for non law enforcement purposes.

94.     The CI was at all times a convicted felon expressly prohibited by law from

possessing a firearm. Therefore, by possessing a firearm during his period of cooperation, he

committed a crime.

95.     Once again law enforcement knew or should have known of the CI's illegal

possession of a firearm.

### Threats and Coercion

96.     Defendants allowed the CI, a convicted felon with a violent past, to threaten the

Plaintiff and others, most of whom did not exhibit any inclination or desire to become active

with the Latin Kings.

97.     Most of the individuals who were arrested on August 20, 2006 had succumbed

and relented to the CI's constant threats to their person, associates and relatives.

98.     When these individuals attended the ordered meetings at the CI's government

paid apartment, the CI told them to relay his threats to other former members not present, which,

including Plaintiff, eventually appeared at the Universal meeting on August 20, 2006 due to the

CIs coercion.

13

99.     In November 2005, the alleged "tribe" of the Town and Country Latin Kings had "broken off" from the "state" and, for all intent and purposes, had disbanded: meaning that there was no Latin King organization in Tampa until law enforcement sent the CI out to create one.

100.     Upon the CI's release on January 30, 2006, he followed the dictates of law enforcement to get Latin Kings, drugs and guns by making phone calls to every former member of the "tribe" in an attempt to get them to re-organize.

101.     It was not until February 19, 2006, three weeks later, that he was able to get anyone to attend a meeting. That meeting yielded only four people.

102.     Four members in attendance at the meeting was not going to satisfy law enforcement so, the CI began calling former members and threatening that they either begin "reporting" or they would get "stripped."

103.     "Reporting" meant attending Sunday meetings, where the group would say a prayer, gossip, eat, drink and socialize.

104.     "Stripped" meant the person would get beaten for three minutes.

105.     When faced with this ultimatum handed down by the CI, an agent of law enforcement, many of the former members began "reporting" to avoid getting "stripped."

106.     At all material times the CI occupied a FBI paid apartment which was equipped with FBI surveillance equipment.

107.     On August 4, 2006, the CI called a meeting of only the Latin Kings, to which no Queens were invited, to talk to the Kings about "OG," a fellow member. This meeting was captured on video tape.

108.     During that meeting, the CI advised the members in attendance of the people who he had issued terminate on sight "TOS" orders on.   He told the members present that, if they

saw the listed individuals, they were to TOS them, which could equal any form of violence.

109.   In that same meeting, the CI also emphasized that "nobody gets the option of running with the tribe." At the close of the meeting, the CI advised the members that they would have to attend a meeting the next day to deal with the "OG" situation.

110.   On August 6, 2006, the CI called a meeting at his apartment to deal with "OG". Once again, this meeting was captured on video tape.

111.   The CI intentionally set this date before the August 20, 2006 "Universal" in order to send a message of intimidation to the others.

112.   The Queens were invited to this meeting and some attended. "OG" was also present for this meeting. The CI lectured the group as to the evidence against "OG". "OG" defended himself, to no avail, and then was given the choice to walk out the door and be dealt with by anyone who found him on the street or to take his three minute violation right then and there. Faced with this "Hobson's choice" OG selected the option to be beaten then.

113.   Prior to and during the beating of "OG", the CI instructed the members as to how the beating would be carried out and instructed James Rojas ("Prophet"), as to how to select the individuals that would administer the beating. He then instructed the two that were to administer the beating as to where to strike the blows, at what speed they should be swinging, and when to switch up or take a break.

114.   During that meeting, the CI advised the members that they "need to arm yourselves up."

115.   For the members present at the above mentioned August 6, 2006 meeting, the beating of OG made the CI's threats regarding "reporting" or getting "stripped" very real.

116.   The orchestrated beating of OG aided the CI in getting all of the forced Tampa

members to attend the August 20, 2006 Universal.

117.    The CI told law enforcement that "OG" was going to get "violated."

118.    Defendants knew in advance that OG was going to be beaten on August 6, 2006, did nothing to stop it and monitored the events.

119.    Instead, the Defendants watched the beating unfold and did nothing to intervene the illegal beating of OG.

120.    Defendants, Zalansky and Gergel did not consider the beating a crime because they believed OG volunteered for the beating.

121.    On August 13, 2006, the CI held another meeting at his apartment. This meeting was also captured on video tape.

122.    During that meeting, he advised those in attendance that the Universal that would be held the following Sunday, August 20, 2006.

123.    The CI told all members present at this meeting that whoever did not attend the "Universal" meeting would be beaten.

124.    The CI also encouraged all present to learn more about the Latin King manifesto and advised them that he intended to quiz them.

125.    He further advised them that if a wrong answer was given he intended on giving that member a minute and a half beating.

126.    At this August 13, 2006 meeting there was no discussion of committing any crimes.

127.    The CI instructed other members to act as armed security for the "Universal."

128.    Defendants instructed the CI to set up a "Universal" meeting in order for him to gather all State and local Latin King members together.

129.    It was the intent of the Defendants that all present at the Universal meeting where to be arrested.

130.    The CI was aware of the Defendants intent on arresting all attendees of the August 20, 2006 Universal.

131.    On August 20, 2006 at approximately, 10:00 a.m., members met at the CI's apartment as directed. Before they left to travel to the location of the "Universal" meeting, the Caribbean Club, the CI assigned two of the members to the front door and demanded that they be like "CIA at the White House." This meeting was also video taped.

132.    Despite the fact that nothing criminal was discussed at the Caribbean Club, at approximately 3:22 p.m., law enforcement moved in to arrest everyone in attendance.

133.    During this raid, law enforcement officers can be seen kicking a pregnant woman while she is on her knees with her hands up in the air.

134.    Prior to the August 20, 2006 raid at the Caribbean Club, Defendants rented the venue and **ZALANSKY** and **GERGEL** applied for a wire tap and a search warrant of the premises, so that they could record the meeting and search the building after the raid.

135.    **ZALANSKY** and **GERGEL** intentionally withheld information that could have effected the Court's decision to authorize the wire tap application and to issue the Search Warrant, specifically regarding the reliability of the CI.

136.    A review of the section entitled *Reliability of Confidential Informant #3786 and Additional Probable Cause* establishes that Defendants intentionally failed to disclose to the neutral magistrate that, CI #3786, had engaged in motorcycle thefts, threatened to beat/kill/sodomize Ms. Ramos and/or her boyfriend, engaged in cocaine sales, possessed firearms, threatened individuals to "report" or get "stripped" or that he had been terminated as a

confidential informant by the FBI.

137. Douglas Bieniek ("Bieniek"), an investigator for the State Attorney's Office, also prepared affidavits in support of search warrants that were executed on the homes of Leandro Beato, Camilo Gonzalez and Buffy (Jorge Villacis).

138. Bieniek cut and pasted from the affidavit in support of the search warrant prepared against Papo (Edwin DeLeon).

139. Most of the information in the affidavit was information provided to Bieniek by Zalansky and Gergel.

140. Bieniek, at the time that he cut and pasted portions of those documents in order to prepare his affidavits was never told by Defendants, **ZALANSKY** or **GERGEL** that the CI had engaged in motorcycle thefts.

141. All of the affidavits prepared by **ZALANSKY** and **GERGEL** or Bieniek, after cutting and pasting material or receiving the information directly from them, also fail to make any mention of the FBI. There is no evidence of the fact that the FBI chose to terminate the CI as a Confidential Source and that they participated in gathering the information included within various affidavits and applications.

142. Moreover, the **FBI** asked Ms. Brown and/or **ZALANSKY** and **GERGEL** to keep their names out of the affidavits and application.

143. As a result of Plaintiff's unlawful arrest on August 20, 2006 Plaintiff's Constitutional Rights, including his Fourth Amendment Right to be free from illegal searches and seizures, was violated.

144. On August 20, 2006, Plaintiff's Fourth Amendment Right to be free from unreasonable searches and seizures was clearly established to a reasonable officer as Plaintiff

18

was not doing anything illegal prior to his arrest and at the time of his arrest. He was merely in attendance at the Latin King's organizational meeting that was arranged by the CI and at which no criminal activity had occurred.

145. In order to protect their CI, subsequent to the August 20, 2006 arrest of Plaintiff, Defendants repeatedly failed to report probation violations of the CI to the Florida Department of Corrections including but not limited to, Osceola County charge of driving an unregistered vehicle and Broward County charges of driving a motorcycle with a concealed tag, no registration, no motorcycle endorsement and driving with a tag not assigned.

146. Defendant, **FBI**, had a custom, practice and/or policy that constituted a deliberate indifference to the constitutional rights of Plaintiff.

147. Defendant, **FBI** inadequately trained/supervised its employees, including but not limited to Agent Dan Weirzbicki in the area of supervision and use of confidential informants and the presence of probable cause for arrest.

148. At all material times Charles Whitehead, Special Agent in Charge of the FBI-Tampa Field Office, had final policymaking authority for the FBI and condoned, consented, ratified and/or approved the custom, practice and/or policy of the **FBI** of violating persons, including Plaintiff's, Fourth Amendment Constitutional rights.

149. Defendant, **HILLSBOROUGH COUNTY** via HCSO, had a custom, practice and/or policy that constituted a deliberate indifference to the constitutional rights of Plaintiff.

150. Defendant, **HILLSBOROUGH COUNTY** via HCSO inadequately trained/supervised its employees, including but not limited to Deputy Gergel in the area of supervision and use of confidential informants and the presence of probable cause for arrest.

151.    At all material times Sheriff, David Gee had final policymaking authority for HCSO and condoned, consented, ratified and/or approved the custom, practice and/or policy of HCSO of violating persons, including Plaintiff's, Fourth Amendment Constitutional rights.

152.    Defendant, **CITY OF TAMPA** via TPD, had a custom, practice and/or policy that constituted a deliberate indifference to the constitutional rights of Plaintiff.

153.    Defendant, **CITY OF TAMPA** via TPD TPD, inadequately trained/supervised its employees, including but not limited to Officer Matthew Zalanksy in the area of supervision and use of confidential informants and the presence of probable cause for arrest.

154. At all material times Chief Hogue had final policymaking authority for TPD, and condoned, consented, ratified and/or approved the custom, practice and/or policy of TPD of violating persons, including Plaintiff's, Fourth Amendment Constitutional rights.

## COMPLIANCE WITH PROCEDURAL REQUIREMENTS

155.    There is no administrative exhaustion requirement regarding Plaintiff's civil rights claim under 42 U.S.C. § 1983. Any and all conditions precedent to bring this action have occurred, been waived, or otherwise have been satisfied including, but not limited to, Florida Statute Section §768.28 requirements. The Notice of Claim was also presented to all appropriate entities, including the State of Florida Department of Financial Services, as prescribed by law. A true and correct copy of the Notices of Claim, along with the certified return receipts for each Defendant, except the FBI, is attached hereto as Composite Exhibit "A" and is incorporated herein by reference.

## COUNT I - SUPPLEMENTAL STATE TORT CLAIM OF FALSE ARREST
## AGAINST DEFENDANT FBI

156.    Plaintiff realleges paragraphs one (1) through 155 (one hundred and fifty-five) of the Common Allegations.

157.    On August 20, 2006 Defendant unreasonably detained Mitchell Bernier by restricting his freedom and arresting him for alleged criminal acts Conspiracy to Engage in Pattern of Racketeering Activity.

158.    The only basis for the arrest was the false belief that Plaintiff was a member of an organization known as the Latin Kings.

159.    The Defendant had no probable cause to arrest the Plaintiff.

160.    Plaintiff was booked into the Hillsborough County Jail on August 20, 2006 with a bond in the amount of $100,000.00 and issued the booking number 06055395.

161.    Unable to bond himself out of jail Plaintiff resided in the Hillsborough County Jail until January 19, 2007.

162.    An information charging RICO and Conspiracy to Commit RICO against the Plaintiff was filed on October 10, 2006.

163.    On February 16, 2007, CHRISTINE BROWN, in her capacity as Assistant State Attorney filed a Nolle Prosequi of all charges against the Plaintiff.

164.    Defendant made a false arrest of Plaintiff.

165.    As a direct result of the above-described acts of the Defendant, **FBI**, Plaintiff, **MITCHELL BERNIER**, has suffered damages including but not limited to, mental anguish, loss of enjoyment of life, pain and suffering, loss of income, loss of ability to earn money, loss of support and services, expenses of being incarcerated expenses of having to bond out of jail and

expenses of having to hire counsel to defend himself against the Defendant's above-described actions.

167.    Plaintiff, **MITCHELL BERNIER**, invokes supplemental jurisdiction of this Court to hear and determine this claim.

WHEREFORE, Plaintiff, **MITCHELL BERNIER**, demands judgment for damages against Defendant, **FBI**, costs of this action, and such further and other relief as the Court may deem just and appropriate. Plaintiff hereby demands a trial by jury.

## COUNT II - SUPPLEMENTAL STATE TORT CLAIM OF FALSE ARREST AGAINST DEFENDANT HILLSBOROUGH COUNTY

168.    Plaintiff realleges paragraphs one (1) through 155 (one hundred and fifty-five) of the Common Allegations.

169.    On August 20, 2006 Defendant unreasonably detained Mitchell Bernier by restricting his freedom and arresting him for alleged criminal acts Conspiracy to Engage in Pattern of Racketeering Activity.

170.    The only basis for the arrest was the false belief that Plaintiff was a member of an organization known as the Latin Kings.

171.    The Defendant had no probable cause to arrest the Plaintiff.

172.    Plaintiff was booked into the Hillsborough County Jail on August 20, 2006 with a bond in the amount of $100,000.00 and issued the booking number 06055395.

173.    Unable to bond himself out of jail Plaintiff resided in the Hillsborough County Jail until January 19, 2007.

174.    An information charging RICO and Conspiracy to Commit RICO against the Plaintiff was filed on October 10, 2006.

175.    On February 16, 2007, CHRISTINE BROWN, in her capacity as Assistant State Attorney, filed a Nolle Prosequi of all charges against the Plaintiff.

176.    Defendant made a false arrest of Plaintiff.

177.    As a direct result of the above-described acts of the Defendant, **HILLSBOROUGH COUNTY**, Plaintiff, **MITCHELL BERNIER**, has suffered damages including but not limited to, mental anguish, loss of enjoyment of life, pain and suffering, loss of income, loss of ability to earn money, loss of support and services, expenses of being incarcerated expenses of having to bond out of jail and expenses of having to hire counsel to defend himself against the Defendant's above-described actions.

178.    Plaintiff, **MITCHELL BERNIER**, invokes supplemental jurisdiction of this Court to hear and determine this claim.

WHEREFORE, Plaintiff, **MITCHELL BERNIER**, demands judgment for damages against Defendants, **HILLSBOROUGH COUNTY**, costs of this action, and such further and other relief as the Court may deem just and appropriate. Plaintiff hereby demands a trial by jury.

## COUNT III - SUPPLEMENTAL STATE TORT CLAIM OF FALSE ARREST AGAINST DEFENDANT WILLIAM GERGEL

179.    Plaintiff realleges paragraphs one (1) through 155 (one hundred and fifty-five) of the Common Allegations.

180.    On August 20, 2006 Defendant unreasonably detained Mitchell Bernier by restricting his freedom and arresting him for alleged criminal acts Conspiracy to Engage in Pattern of Racketeering Activity.

181.    The only basis for the arrest was the false belief that Plaintiff was a member of an organization known as the Latin Kings.

182.    The Defendant had no probable cause to arrest the Plaintiff.

183. Plaintiff was booked into the Hillsborough County Jail on August 20, 2006 with a bond in the amount of $100,000.00 and issued the booking number 06055395.

184. Unable to bond himself out of jail Plaintiff resided in the Hillsborough County Jail until January 19, 2007.

185. An Information charging RICO and Conspiracy to Commit RICO against the Plaintiff was filed on October 10, 2006.

186. On February 16, 2007, CHRISTINE BROWN, in her capacity as Assistant State Attorney, filed a Nolle Prosequi of all charges against the Plaintiff.

187. Defendant made a false arrest of Plaintiff.

188. As a direct result of the above-described acts of the Defendant, **WILLIAM GERGEL**, Plaintiff, **MITCHELL BERNIER**, has suffered damages including but not limited to, mental anguish, loss of enjoyment of life, pain and suffering, loss of income, loss of ability to earn money, loss of support and services, expenses of being incarcerated expenses of having to bond out of jail and expenses of having to hire counsel to defend himself against the Defendant's above-described actions.

189. Plaintiff, MITCHELL BERNIER, invokes supplemental jurisdiction of this Court to hear and determine this claim.

WHEREFORE, Plaintiff, **MITCHELL BERNIER**, demands judgment for damages against Defendant, **WLLIAM GERGEL**, costs of this action, and such further and other relief as the Court may deem just and appropriate. Plaintiff hereby demands a trial by jury.

## COUNT IV - SUPPLEMENTAL STATE TORT CLAIM OF FALSE ARREST
## AGAINST DEFENDANT CITY OF TAMPA

190.    Plaintiff realleges paragraphs one (1) through 155 (one hundred and fifty-five) of the Common Allegations.

191.    On August 20, 2006 Defendant unreasonably detained Mitchell Bernier by restricting his freedom and arresting him for alleged criminal acts Conspiracy to Engage in Pattern of Racketeering Activity.

192.    The only basis for the arrest was the false belief that Plaintiff was a member of an organization known as the Latin Kings.

193.    The Defendant had no probable cause to arrest the Plaintiff.

194.    Plaintiff was booked into the Hillsborough County Jail on August 20, 2006with a bond in the amount of $100,000.00 and issued the booking number 06055395.

195.    Unable to bond himself out of jail Plaintiff resided in the Hillsborough County Jail until January 19, 2007.

196.    An information charging RICO and Conspiracy to Commit RICO against the Plaintiff was filed on October 10, 2006.

197.    On February 16, 2007, CHRISTINE BROWN, in her capacity as Assistant State Attorney of the Defendant, STATE, filed a Nolle Prosequi of all charges against the Plaintiff.

198.    Defendant made a false arrest of Plaintiff.

199.    As a direct result of the above-described acts of the Defendant, **CITY OF TAMPA**, Plaintiff, **MITCHELL BERNIER**, has suffered damages including but not limited to, mental anguish, loss of enjoyment of life, pain and suffering, loss of income, loss of ability to earn money, loss of support and services, expenses of being incarcerated expenses of having to

25

bond out of jail and expenses of having to hire counsel to defend himself against the Defendant's above-described actions.

200.    Plaintiff, **MITCHELL BERNIER**, invokes supplemental jurisdiction of this Court to hear and determine this claim.

WHEREFORE, Plaintiff, **MITCHELL BERNIER**, demands judgment for damages against Defendant, **CITY OF TAMPA**, costs of this action, and such further and other relief as the Court may deem just and appropriate. Plaintiff hereby demands a trial by jury.

## COUNT V - SUPPLEMENTAL STATE TORT CLAIM OF FALSE ARREST AGAINST DEFENDANT MATTHEW ZALANSKY

201.    Plaintiff realleges paragraphs one (1) through 155 (one hundred and fifty-five) of the Common Allegations.

202.    On August 20, 2006 Defendant unreasonably detained Mitchell Bernier by restricting his freedom and arresting him for alleged criminal acts Conspiracy to Engage in Pattern of Racketeering Activity.

203.    The only basis for the arrest was the false belief that Plaintiff was a member of an organization known as the Latin Kings.

204.    The Defendant had no probable cause to arrest the Plaintiff.

205.    Plaintiff was booked into the Hillsborough County Jail on August 20, 2006with a bond in the amount of $100,000.00 and issued the booking number 06055395.

206.    Unable to bond himself out of jail Plaintiff resided in the Hillsborough County Jail until January 19, 2007.

207.    An Information charging RICO and Conspiracy to Commit RICO against the Plaintiff was filed on October 10, 2006.

208. On February 16, 2007, CHRISTINE BROWN, in her capacity as Assistant State Attorney of the Defendant, STATE, filed a Nolle Prosequi of all charges against the Plaintiff.

209. Defendant made a false arrest of Plaintiff.

210. As a direct result of the above-described acts of the Defendant, **MATTHEW ZALANSKY**, Plaintiff, **MITCHELL BERNIER**, has suffered damages including but not limited to, mental anguish, loss of enjoyment of life, pain and suffering, loss of income, loss of ability to earn money, loss of support and services, expenses of being incarcerated expenses of having to bond out of jail and expenses of having to hire counsel to defend himself against the Defendant's above-described actions.

211. Plaintiff, **MITCHELL BERNIER**, invokes supplemental jurisdiction of this Court to hear and determine this claim.

WHEREFORE, Plaintiff, **MITCHELL BERNIER**, demands judgment for damages against Defendant, **MATTHEW ZALANKSY**, costs of this action, and such further and other relief as the Court may deem just and appropriate. Plaintiff hereby demands a trial by jury.

## COUNT VI - SUPPLEMENTAL STATE TORT CLAIM OF MALICIOUS PROSECUTION AGAINST DEFENDANT HILLSBOROUGH COUNTY

212. Plaintiff realleges paragraphs one (1) through 155 (one hundred and fifty-five) of the Common Allegations.

213. An Information charging RICO and Conspiracy to Commit RICO against the Plaintiff was filed on October 10, 2006.

214. Defendant's actions, including but not limited to the illegal arrest of Plaintiff and the failure to properly supervise its CI, Daniel Agosto, caused Plaintiff to be prosecuted by the Hillsborough County State Attorney's Office.

215.     No probable cause existed for Plaintiff to be formally charged and prosecuted.

216.     On February 16, 2007, CHRISTINE BROWN, in her capacity as Assistant State Attorney , filed a Nolle Prosequi of all charges against the Plaintiff.

217.     Defendant exhibited malice in its actions of attempting to formally prosecute Plaintiff for RICO and Conspiracy to Commit RICO.

218.     As a direct result of the above-described acts of the Defendant, **HILLSBOROUGH COUNTY**, Plaintiff, **MITCHELL BERNIER**, has suffered damages including but not limited to, mental anguish, loss of enjoyment of life, pain and suffering, loss of income, loss of ability to earn money, loss of support and services, expenses of being incarcerated expenses of having to bond out of jail and expenses of having to hire counsel to defend himself against the Defendant's above-described actions.

219.     Plaintiff, **MITCHELL BERNIER**, invokes supplemental jurisdiction of this Court to hear and determine this claim.

WHEREFORE, Plaintiff, **MITCHELL BERNIER**, demands judgment for damages against Defendants, **HILLSBOROUGH COUNTY**, costs of this action, and such further and other relief as the Court may deem just and appropriate. Plaintiff hereby demands a trial by jury.

## COUNT VII- SUPPLEMENTAL STATE TORT CLAIM OF MALICIOUS PROSECUTION AGAINST DEFENDANT WILLIAM GERGEL

220.     Plaintiff realleges paragraphs one (1) through 155 (one hundred and fifty-five) of the Common Allegations.

221.     An Information charging RICO and Conspiracy to Commit RICO against the Plaintiff was filed on October 10, 2006.

222.    Defendant's actions, including but not limited to the illegal arrest of Plaintiff and the failure to properly supervise its CI, Daniel Agosto, caused Plaintiff to be prosecuted by the Hillsborough County State Attorney's Office.

223.    No probable cause existed for Plaintiff to be formally charged and prosecuted.

224.    On February 16, 2007, CHRISTINE BROWN, in her capacity as Assistant State Attorney, filed a Nolle Prosequi of all charges against the Plaintiff.

225.    Defendant exhibited malice in its actions of attempting to formally prosecute Plaintiff for RICO and Conspiracy to Commit RICO.

226.    As a direct result of the above-described acts of the Defendant, **WILLIAM GERGEL**, Plaintiff, **MITCHELL BERNIER**, has suffered damages including but not limited to, mental anguish, loss of enjoyment of life, pain and suffering, loss of income, loss of ability to earn money, loss of support and services, expenses of being incarcerated expenses of having to bond out of jail and expenses of having to hire counsel to defend himself against the Defendant's above-described actions.

227.    Plaintiff, **MITCHELL BERNIER**, invokes supplemental jurisdiction of this Court to hear and determine this claim.

WHEREFORE, Plaintiff, **MITCHELL BERNIER**, demands judgment for damages against Defendants, **WILLIAM GERGEL**, costs of this action, and such further and other relief as the Court may deem just and appropriate. Plaintiff hereby demands a trial by jury.

### COUNT VIII - SUPPLEMENTAL STATE TORT CLAIM OF MALICIOUS PROSECUTION AGAINST DEFENDANT CITY OF TAMPA

228.    Plaintiff realleges paragraphs one (1) through 155 (one hundred and fifty-five) of the Common Allegations.

229.   An Information charging RICO and Conspiracy to Commit RICO against the Plaintiff was filed on October 10, 2006.

230.   Defendant's actions, including but not limited to the illegal arrest of Plaintiff and the failure to properly supervise its CI, Daniel Agosto, caused Plaintiff to be prosecuted by the Hillsborough County State Attorney's Office (Defendant, STATE).

231.   No probable cause existed for Plaintiff to be formally charged and prosecuted.

232.   On February 16, 2007, CHRISTINE BROWN, in her capacity as Assistant State Attorney, filed a Nolle Prosequi of all charges against the Plaintiff.

233.   Defendant exhibited malice in its actions of attempting to formally prosecute Plaintiff for RICO and Conspiracy to Commit RICO.

234.   As a direct result of the above-described acts of the Defendant, **CITY OF TAMPA**, Plaintiff, **MITCHELL BERNIER**, has suffered damages including but not limited to, mental anguish, loss of enjoyment of life, pain and suffering, loss of income, loss of ability to earn money, loss of support and services, expenses of being incarcerated expenses of having to bond out of jail and expenses of having to hire counsel to defend himself against the Defendant's above-described actions.

235.   Plaintiff, **MITCHELL BERNIER**, invokes supplemental jurisdiction of this Court to hear and determine this claim.

WHEREFORE, Plaintiff, **MITCHELL BERNIER**, demands judgment for damages against Defendants, **CITY OF TAMPA**, costs of this action, and such further and other relief as the Court may deem just and appropriate. Plaintiff hereby demands a trial by jury.

## COUNT IX - SUPPLEMENTAL STATE TORT CLAIM OF MALICIOUS PROSECUTION AGAINST DEFENDANT MATTHEW ZALANSKY

236.    Plaintiff realleges paragraphs one (1) through 155 (one hundred and fifty-five)  of the Common Allegations.

237.    An Information charging RICO and Conspiracy to Commit RICO against the Plaintiff was filed on October 10, 2006.

238.    Defendant's actions, including but not limited to the illegal arrest of Plaintiff and the failure to properly supervise its CI, Daniel Agosto, caused Plaintiff to be prosecuted by the Hillsborough County State Attorney's Office.

239.    No probable cause existed for Plaintiff to be formally charged and prosecuted.

240.    On February 16, 2007, CHRISTINE BROWN, in her capacity as Assistant State Attorney, filed a Nolle Prosequi of all charges against the Plaintiff.

241.    Defendant exhibited malice in its actions of attempting to formally prosecute Plaintiff for RICO and Conspiracy to Commit RICO.

242.    As a direct result of the above-described acts of the Defendant, **MATTHEW ZALANSKY**, Plaintiff, **MITCHELL BERNIER**, has suffered damages including but not limited to, mental anguish, loss of enjoyment of life, pain and suffering, loss of income, loss of ability to earn money, loss of support and services, expenses of being incarcerated expenses of having to bond out of jail and expenses of having to hire counsel to defend himself against the Defendant's above-described actions.

243.    Plaintiff, **MITCHELL BERNIER**, invokes supplemental jurisdiction of this Court to hear and determine this claim.

31

WHEREFORE, Plaintiff, **MITCHELL BERNIER**, demands judgment for damages against Defendants, **MATTHEW ZALANSKY**, costs of this action, and such further and other relief as the Court may deem just and appropriate. Plaintiff hereby demands a trial by jury.

## COUNT X - SUPPLEMENTAL STATE TORT CLAIM OF MALICIOUS PROSECUTION AGAINST DEFENDANT FBI

244.     Plaintiff realleges paragraphs one (1) through 155 (one hundred and fifty-five) of the Common Allegations.

245.     An Information charging RICO and Conspiracy to Commit RICO against the Plaintiff was filed on October 10, 2006.

246.     Defendant's actions, including but not limited to the illegal arrest of Plaintiff and the failure to properly supervise its CI, Daniel Agosto, caused Plaintiff to be prosecuted by the Hillsborough County State Attorney's Office.

247.     No probable cause existed for Plaintiff to be formally charged and prosecuted.

248.     On February 16, 2007, CHRISTINE BROWN, in her capacity as Assistant State Attorney, filed a Nolle Prosequi of all charges against the Plaintiff.

249.     Defendant exhibited malice in its actions of attempting to formally prosecute Plaintiff for RICO and Conspiracy to Commit RICO.

250.     As a direct result of the above-described acts of the Defendant, **FBI**, Plaintiff, **MITCHELL BERNIER**, has suffered damages including but not limited to, mental anguish, loss of enjoyment of life, pain and suffering, loss of income, loss of ability to earn money, loss of support and services, expenses of being incarcerated expenses of having to bond out of jail and expenses of having to hire counsel to defend himself against the Defendant's above-described actions.

251.     Plaintiff, **MITCHELL BERNIER**, invokes supplemental jurisdiction of this Court to hear and determine this claim.

WHEREFORE, Plaintiff, **MITCHELL BERNIER**, demands judgment for damages against Defendants, **FBI**, costs of this action, and such further and other relief as the Court may deem just and appropriate. Plaintiff hereby demands a trial by jury.

### COUNT XI - Fed. Stat. §1983 VIOLATIONS AGAINST DEFENDANT FBI

252.     Plaintiff realleges paragraphs one (1) through 155 (one hundred and fifty-five) of the Common Allegations.

253.     On August 20, 2006 Defendant unreasonably detained Mitchell Bernier by restricting his freedom and arresting him for alleged criminal acts Conspiracy to Engage in Pattern of Racketeering Activity.

254.     Defendant's actions of arresting Plaintiff were objectively unreasonable.

255.     Plaintiff's Fourth Amendment Right was violated when he was unlawfully arrested.

256.     The only basis for the arrest was the false belief that Plaintiff was a member of an organization known as the Latin Kings.

257.     The Defendant had no arguable probable cause to arrest the Plaintiff.

258.     At all material times it was unreasonable for Defendant to believe probable cause existed for the arrest of Plaintiff.

259.     Defendant knew or should have known that the action of arresting Plaintiff violated clearly established law, the Fourth Amendment of the United States Constitution.

260.     Plaintiff was booked into the Hillsborough County Jail on August 20, 2006with a bond in the amount of $100,000.00 and issued the booking number 06055395.

261.   Unable to bond himself out of jail Plaintiff resided in the Hillsborough County Jail until January 19, 2007.

262.   An Information charging RICO and Conspiracy to Commit RICO against the Plaintiff was filed on October 10, 2006.

263.   Defendant's actions, including but not limited to the illegal arrest of Plaintiff, the failure to properly supervise its CI, Daniel Agosto and the improper filing of an Information, caused Plaintiff to be prosecuted by the Hillsborough County State Attorney's Office.

264.   No arguable probable cause existed for Plaintiff to be formally charged and prosecuted.

265.   On February 16, 2007, CHRISTINE BROWN, in her capacity as Assistant State Attorney, filed a Nolle Prosequi of all charges against the Plaintiff.

266.   Defendant exhibited malice in its actions of formally prosecuting Plaintiff for RICO and Conspiracy to Commit RICO.

267.   Defendant's custom, practice and/or policy of supervising confidential informants and defining "gang activity" is directly liable in causing the Plaintiff to be unreasonable arrested, formally charged and prosecuted for RICO and Conspiracy to Commit RICO.

268.   As a direct result of the above-described acts of the Defendant, **FBI**, Plaintiff, **MITCHELL BERNIER**, has suffered damages including but not limited to, mental anguish, loss of enjoyment of life, pain and suffering, loss of income, loss of ability to earn money, loss of support and services, expenses of being incarcerated expenses of having to bond out of jail and expenses of having to hire counsel to defend himself against the Defendant's above-described actions.

WHEREFORE, Plaintiff, **MITCHELL BERNIER**, demands judgment for damages against Defendants, **FBI**, costs of this action, attorneys' fees and such further and other relief as the Court may deem just and appropriate. Plaintiff hereby demands a trial by jury.

## COUNT XII - Fed. Stat. §1983 VIOLATIONS AGAINST DEFENDANT HILLSBOROUGH COUNTY

269.    Plaintiff realleges paragraphs one (1) through 155 (one hundred and fifty-five) of the Common Allegations.

270.    On August 20, 2006 Defendant unreasonably detained Mitchell Bernier by restricting his freedom and arresting him for alleged criminal acts Conspiracy to Engage in Pattern of Racketeering Activity.

271.    Defendant's actions of arresting Plaintiff were objectively unreasonable.

272.    Plaintiff's Fourth Amendment Right was violated when he was unlawfully arrested.

273.    The only basis for the arrest was the false belief that Plaintiff was a member of an organization known as the Latin Kings.

274.    The Defendant had no arguable probable cause to arrest the Plaintiff.

275.    At all material times it was unreasonable for Defendant to believe probable cause existed for the arrest of Plaintiff.

276.    Defendant knew or should have known that the action of arresting Plaintiff violated clearly established law, the Fourth Amendment of the United States Constitution.

277.    Plaintiff was booked into the Hillsborough County Jail on August 20, 2006 with a bond in the amount of $100,000.00 and issued the booking number 06055395.

278.    Unable to bond himself out of jail Plaintiff resided in the Hillsborough County Jail until January 19, 2007.

279.    An Information charging RICO and Conspiracy to Commit RICO against the Plaintiff was filed on October 10, 2006.

280.    Defendant's actions, including but not limited to the illegal arrest of Plaintiff, the failure to properly supervise its CI, Daniel Agosto and the improper filing of an Information, caused Plaintiff to be prosecuted by the Hillsborough County State Attorney's Office.

281.    No arguable probable cause existed for Plaintiff to be formally charged and prosecuted.

282.    On February 16, 2007, CHRISTINE BROWN, in her capacity as Assistant State Attorney, filed a Nolle Prosequi of all charges against the Plaintiff.

283.    Defendant exhibited malice in its actions of formally prosecuting Plaintiff for RICO and Conspiracy to Commit RICO.

284.    Defendant's custom, practice and/or policy of supervising confidential informants and defining "gang activity" is directly liable in causing the Plaintiff to be unreasonable arrested, formally charged and prosecuted for RICO and Conspiracy to Commit RICO.

285.    As a direct result of the above-described acts of the Defendant, **HILLSBOROUGH COUNTY**, Plaintiff, **MITCHELL BERNIER**, has suffered damages including but not limited to, mental anguish, loss of enjoyment of life, pain and suffering, loss of income, loss of ability to earn money, loss of support and services, expenses of being incarcerated expenses of having to bond out of jail and expenses of having to hire counsel to defend himself against the Defendant's above-described actions.

WHEREFORE, Plaintiff, **MITCHELL BERNIER**, demands judgment for damages against Defendants, **HILLSBOROUGH COUNTY**, costs of this action, attorneys' fees and

such further and other relief as the Court may deem just and appropriate. Plaintiff hereby demands a trial by jury.

## COUNT XIII - Fed. Stat. §1983 VIOLATIONS AGAINST DEFENDANT WILLIAM GERGEL

286.    Plaintiff realleges paragraphs one (1) through 155 (one hundred and fifty-five) of the Common Allegations.

287.    On August 20, 2006 Defendant unreasonably detained Mitchell Bernier by restricting his freedom and arresting him for alleged criminal acts Conspiracy to Engage in Pattern of Racketeering Activity.

288.    Defendant's actions of arresting Plaintiff were objectively unreasonable.

289.    Plaintiff's Fourth Amendment Right was violated when he was unlawfully arrested.

290.    The only basis for the arrest was the false belief that Plaintiff was a member of an organization known as the Latin Kings.

291.    The Defendant had no arguable probable cause to arrest the Plaintiff.

292.    At all material times it was unreasonable for Defendant to believe probable cause existed for the arrest of Plaintiff.

293.    Defendant knew or should have known that the action of arresting Plaintiff violated established law, the Fourth Amendment of the United States Constitution.

294.    Plaintiff was booked into the Hillsborough County Jail on August 20, 2006 with a bond in the amount of $100,000.00 and issued the booking number 06055395.

295.    Unable to bond himself out of jail Plaintiff resided in the Hillsborough County Jail until January 19, 2007.

296.    An Information charging RICO and Conspiracy to Commit RICO against the Plaintiff was filed on October 10, 2006.

297.    Defendant's actions, including but not limited to the illegal arrest of Plaintiff, the failure to properly supervise its CI, Daniel Agosto and the improper filing of an Information, caused Plaintiff to be prosecuted by the Hillsborough County State Attorney's Office.

298.    No arguable probable cause existed for Plaintiff to be formally charged and prosecuted.

299.    On February 16, 2007, CHRISTINE BROWN, in her capacity as Assistant State Attorney, filed a Nolle Prosequi of all charges against the Plaintiff.

300.    Defendant exhibited malice in its actions of formally prosecuting Plaintiff for RICO and Conspiracy to Commit RICO.

301.    Defendant's custom, practice and/or policy of supervising confidential informants and defining "gang activity" is directly liable in causing the Plaintiff to be unreasonable arrested, formally charged and prosecuted for RICO and Conspiracy to Commit RICO.

302.    As a direct result of the above-described acts of the Defendant, **WILLIAM GERGEL,** Plaintiff, **MITCHELL BERNIER,** has suffered damages including but not limited to, mental anguish, loss of enjoyment of life, pain and suffering, loss of income, loss of ability to earn money, loss of support and services, expenses of being incarcerated expenses of having to bond out of jail and expenses of having to hire counsel to defend himself against the Defendant's above-described actions.

WHEREFORE, Plaintiff, **MITCHELL BERNIER,** demands judgment for damages against Defendants, **WILLIAM GERGEL,** costs of this action, attorneys' fees and such further

and other relief as the Court may deem just and appropriate. Plaintiff hereby demands a trial by jury.

### COUNT XIV- Fed. Stat. §1983 VIOLATIONS AGAINST DEFENDANT CITY OF TAMPA

303.    Plaintiff realleges paragraphs one (1) through 155 (one hundred and fifty-five) of the Common Allegations.

304.    On August 20, 2006 Defendant unreasonably detained Mitchell Bernier by restricting his freedom and arresting him for alleged criminal acts Conspiracy to Engage in Pattern of Racketeering Activity.

305.    Defendant's actions of arresting Plaintiff were objectively unreasonable.

306.    Plaintiff's Fourth Amendment Right was violated when he was unlawfully arrested.

307.    The only basis for the arrest was the false belief that Plaintiff was a member of an organization known as the Latin Kings.

308.    The Defendant had no arguable probable cause to arrest the Plaintiff.

309.    At all material times it was unreasonable for Defendant to believe probable cause existed for the arrest of Plaintiff.

310.    Defendant knew or should have known that the action of arresting Plaintiff violated clearly established law, the Fourth Amendment of the United States Constitution.

311.    Plaintiff was booked into the Hillsborough County Jail on August 20, 2006 with a bond in the amount of $100,000.00 and issued the booking number 06055395.

312.    Unable to bond himself out of jail Plaintiff resided in the Hillsborough County Jail until January 19, 2007.

313. An Information charging RICO and Conspiracy to Commit RICO against the Plaintiff was filed on October 10, 2006.

314. Defendant's actions, including but not limited to the illegal arrest of Plaintiff, the failure to properly supervise its CI, Daniel Agosto and the improper filing of an Information, caused Plaintiff to be prosecuted by the Hillsborough County State Attorney's Office.

315. No arguable probable cause existed for Plaintiff to be formally charged and prosecuted.

316. On February 16, 2007, CHRISTINE BROWN, in her capacity as Assistant State Attorney, filed a Nolle Prosequi of all charges against the Plaintiff.

317. Defendant exhibited malice in its actions of formally prosecuting Plaintiff for RICO and Conspiracy to Commit RICO.

318. Defendant's custom, practice and/or policy of supervising confidential informants and defining "gang activity" is directly liable in causing the Plaintiff to be unreasonable arrested, formally charged and prosecuted for RICO and Conspiracy to Commit RICO.

319. As a direct result of the above-described acts of the Defendant, **CITY OF TAMPA**, Plaintiff, **MITCHELL BERNIER**, has suffered damages including but not limited to, mental anguish, loss of enjoyment of life, pain and suffering, loss of income, loss of ability to earn money, loss of support and services, expenses of being incarcerated expenses of having to bond out of jail and expenses of having to hire counsel to defend himself against the Defendant's above-described actions.

WHEREFORE, Plaintiff, **MITCHELL BERNIER**, demands judgment for damages against Defendants, **CITY OF TAMPA**, costs of this action, attorneys' fees and such further and other relief as the Court may deem just and appropriate. Plaintiff hereby demands a trial by jury.

## COUNT XV - Fed. Stat. §1983 VIOLATIONS AGAINST DEFENDANT MATTHEW ZALANSKY

320.     Plaintiff realleges paragraphs one (1) through 155 (one hundred and fifty-five) of the Common Allegations.

321.     On August 20, 2006 Defendant unreasonably detained Mitchell Bernier by restricting his freedom and arresting him for alleged criminal acts Conspiracy to Engage in Pattern of Racketeering Activity.

322.     Defendant's actions of arresting Plaintiff were objectively unreasonable.

323.     Plaintiff's Fourth Amendment Right was violated when he was unlawfully arrested.

324.     The only basis for the arrest was the false belief that Plaintiff was a member of an organization known as the Latin Kings.

325.     The Defendant had no arguable probable cause to arrest the Plaintiff.

326.     At all material times it was unreasonable for Defendant to believe probable cause existed for the arrest of Plaintiff.

327.     Defendant knew or should have known that the action of arresting Plaintiff violated clearly established law, the Fourth Amendment of the United States Constitution.

328.     Plaintiff was booked into the Hillsborough County Jail on August 20, 2006 with a bond in the amount of $100,000.00 and issued the booking number 06055395.

329.     Unable to bond himself out of jail Plaintiff resided in the Hillsborough County Jail until January 19, 2007.

330.     An Information charging RICO and Conspiracy to Commit RICO against the Plaintiff was filed on October 10, 2006.

331.    Defendant's actions, including but not limited to the illegal arrest of Plaintiff, the failure to properly supervise its CI, Daniel Agosto and the improper filing of an Information, caused Plaintiff to be prosecuted by the Hillsborough County State Attorney's Office.

332.    No arguable probable cause existed for Plaintiff to be formally charged and prosecuted.

333.    On February 16, 2007, CHRISTINE BROWN, in her capacity as Assistant State Attorney, filed a Nolle Prosequi of all charges against the Plaintiff.

334.    Defendant exhibited malice in its actions of formally prosecuting Plaintiff for RICO and Conspiracy to Commit RICO.

335.    Defendant's custom, practice and/or policy of supervising confidential informants and defining "gang activity" is directly liable in causing the Plaintiff to be unreasonable arrested, formally charged and prosecuted for RICO and Conspiracy to Commit RICO.

336.    As a direct result of the above-described acts of the Defendant, **MATTHEW ZALANSKY**, Plaintiff, **MITCHELL BERNIER**, has suffered damages including but not limited to, mental anguish, loss of enjoyment of life, pain and suffering, loss of income, loss of ability to earn money, loss of support and services, expenses of being incarcerated expenses of having to bond out of jail and expenses of having to hire counsel to defend himself against the Defendant's above-described actions.

WHEREFORE, Plaintiff, **MITCHELL BERNIER**, demands judgment for damages against Defendants, **MATTHEW ZALANSKY**, costs of this action, attorneys' fees and such

further and other relief as the Court may deem just and appropriate.  Plaintiff hereby demands a

trial by jury.

KIMBERLEY M. KOHN, ESQUIRE
Florida Bar No. 0008850
400 North Ashley Drive, Suite 2180
Tampa, Florida 33602
813/413-2424//813-386-6211 Fax
kim@goudiekohnlaw.com
Attorneys for Plaintiff

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _Nicolas Frass?_ ☐ Agent ☐ Addressee
B. Received by (Printed Name)  C. Date of Delivery
D. Is delivery address different from item 1? ☐ Yes ☐ No
If YES, enter delivery address below:

1. Article Addressed to:

Hillsborough County
Sheriff's Office
Attn: Notice of Claim
1201 Orient Road
Tampa, FL 33619

3. Service Type
☐ Certified Mail ☐ Express Mail
☐ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.
4. Restricted Delivery? (Extra Fee) ☐ Yes

2. Article Number (Transfer from service label)
7007 1490 0003 0434 0282

PS Form 3811, August 2001    Domestic Return Receipt    102595-02-M-1035

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature DEPARTMENT OF FINANCIAL SERVICES
X S. NEATH, MAIL CENTER SUPERVISOR ☐ Agent ☐ Addressee
B. Received by (Printed Name)  C. Date of Delivery
NOV 2 9 2007
D. Is delivery address different from item 1? ☐ Yes ☐ No
If YES, enter delivery address below:

1. Article Addressed to:

Florida Department of
Financial Services
200 E. Gaines street
Tallahassee, FL 32399

3. Service Type
☐ Certified Mail ☐ Express Mail
☐ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.
4. Restricted Delivery? (Extra Fee) ☐ Yes

2. Article Number (Transfer from service label)
7007 1490 0003 0434 0466

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X ☐ Agent ☐ Addressee
B. Received by (Printed Name)  C. Date of Delivery
Nicolas Frass?
D. Is delivery address different from item 1? ☐ Yes ☐ No
If YES, enter delivery address below:

1. Article Addressed to:

Tampa Police Department
411 N. Franklin street
Tampa, Fl 33602

3. Service Type
☐ Certified Mail ☐ Express Mail
☐ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.

Exhibit "A"
Bernier, M.